UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN TAYLOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>D. ZATECKY et al., )<br>)<br>Defendants. ) | No. 1:20-cv-02149-TWP-DML |

**Order Screening Complaint, Dismissing Insufficient Claims, and
Directing Service of Process**

Plaintiff John Taylor, at relevant times an inmate at Pendleton Correctional Facility (PCF), filed this action pursuant to 42 U.S.C. § 1983. Because Mr. Taylor is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his complaint before service on the defendants.

**I. Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted).

## II. The Complaint

Mr. Taylor names eleven defendants: (1) Superintendent Dushan Zatecky; (2) Assistant Superintendent Alsip; (3) Ms. Stamper, Unit Team Manager; (4) Lt. J.C. Jackson; (5) Sgt. Griffin; (6) Sgt. Lunsford; (7) Custody Officer Hammond; (8) Dr. Lamar; (9) Dr. Levine; (10) Nurse Assistant Jane Doe; and (11) Wexford of Indiana, LLC.

According to his complaint, prisoners at PCF started to become ill with COVID-19 in February and March 2020. Mr. Zatecky and other PCF administrators suspected that prisoners in the American Legion dorm had been exposed to the virus, and they decided to transfer one of the ill inmates to Mr. Taylor's dorm, which is an "open dorm" with 81 inmates housed close together. Inmates in the dorm began to fall ill, and the dorm was placed on quarantine. After an inmate tested positive for COVID-19, Mr. Taylor and twenty other inmates were moved to IRT, a different facility on the PCF campus, and placed in single-person cells. Then, "as a ruse" to remove Mr. Taylor and the other inmates from the single-person cells, Sgt. Griffin threatened to house a COVID-19-positive inmate with Mr. Taylor. Dkt. 1 at 10. Mr. Taylor and the others agreed to be moved back to PCF, where they were mixed with four separately quarantined groups in a gym in unsanitary conditions. During the quarantine, inmates came and went regularly due to various medical issues.

Mr. Taylor suffers from post-traumatic stress disorder and major depression. He requested to speak with mental health staff because he began suffering from extreme anxiety and

persecutorial delusions, believing prison staff were trying to kill him by over-exposing him to COVID-19. Psychologists Dr. Lamar and Dr. Levine refused to see him.

Medical staff at PCF also refused to see Mr. Taylor for symptoms of physical illness, including chronic headaches, chills, "and extreme pain and inflammation of the lungs, heat, and kidneys." Dkt. 1 at 12. Nurse Jane Doe refused to refer Mr. Taylor to a provider for an exam or provide him with Tylenol, aspirin, or any other treatment.

On April 15, 2020, staff from the Indiana Health Department visited PCF and tested all 46 inmates who were being housed in the gym. They advised the inmates, Mr. Zatecky, Mr. Alsip, and Unit Team Manager Stamper that no other inmates should be moved in or out of the gym until test results came back. Despite this advice, on April 17, 2020, Ms. Stamper and Lt. Jackson attempted to transfer a COVID-19-positive inmate—the same inmate they attempted to house in IRT—into the gym. Inmates in the gym asked to see another prison official, and Mr. Taylor asked why they were moving a COVID-19-positive inmate into the gym.

Ms. Stamper called a "signal-10," and PCF staff including Sgt. Lunsford, Officer Hammond, and James Walker responded. Without warning, Ms. Stamper sprayed the inmates with pepper spray, spraying Mr. Taylor in the face. Mr. Taylor saw staff members beating inmate Nicholas LaCruze, despite Mr. LaCruze saying he could not breathe. Mr. Taylor tried to stop the staff from beating Mr. LaCruze.

After the fight, Mr. Taylor was left covered in pepper spray for six hours with his hands handcuffed behind his back. He was placed in a cell with a toilet and sink, but the sink water was brown and fetid. Mr. Taylor was refused adequate clean drinking water between April 17 and April 23, 2020. Mr. Taylor was refused a shower to clean off the pepper spray until April 20, 2020.

On April 19, 2020, Mr. Taylor learned that his COVID-19 test was negative. On April 23, 2020, Mr. Taylor was placed in a van with multiple COVID-19-positive inmates and transferred to the Westville Control Unit due to his participation in the April 17 fight.

Mr. Taylor's family and PCF administrators contacted Indiana Department of Correction (IDOC) Commissioner Robert Carter to advise him of the fight. Mr. Taylor believes Mr. Carter assisted PCF administrators with covering up the incident and punishing Mr. Taylor for "stopping the lynching of Nicholas LaCruze." *Id.* at 16.

Mr. Taylor alleges that Mr. Zatecky and Wexford failed to establish policies and practices to ensure inmates would receive appropriate medical care, instead implementing cost-saving measures. Mr. Taylor also alleges that Wexford has a widespread policy of providing poor mental health treatment to seriously mentally ill inmates by denying treatment, permitting mentally ill inmates to be placed in prolonged segregation, falsifying treatment records, and triggering symptoms to provoke inmates to create a pretext for placing mentally ill inmates in segregation.

Mr. Taylor seeks damages.

### III. Discussion of Claims

The following Eighth Amendment claims shall proceed:

- COVID-19 housing and medical care related claims shall proceed against defendants Wexford, Mr. Zatecky, Mr. Alsip, Ms. Stamper, Lt. Jackson, and Sgt. Griffin;

- Inadequate mental health care claims shall proceed against Wexford, Dr. Levine and Dr. Lamar;

- Excessive force claims shall proceed against Ms. Stamper, Lt. Jackson, Sgt. Lunsford, and Officer Hammond for their actions during the fight and for the six hours Mr. Taylor was subsequently handcuffed;

- Conditions-of-confinement claims shall proceed against Mr. Zatecky, Mr. Alsip, Lt. Jackson, Sgt. Lunsford, and Officer Hammond for the days after the fight when Mr. Taylor had no access to the shower and inadequate access to clean drinking water.

Any claim against Nurse Jane Doe is **dismissed** for failure to state a claim upon which relief can be granted because "it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back ... nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (internal citations omitted). Bringing suit against unnamed or "John Doe" defendants in federal court is generally disfavored by the Seventh Circuit. *Strauss v. City of Chicago*, 760 F.2d 765, 770 n.6 (7th Cir. 1985). If Mr. Taylor learns the name of the nurse, he may seek leave to add claims against her.

This summary of claims includes all of the viable claims identified by the Court. If Mr. Taylor believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through March 22, 2021**, in which to identify those claims.

### IV. Service of Process

The **clerk is directed** to terminate Jane Doe as a defendant in this action.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to **issue process** to defendants (1) Superintendent Dushan Zatecky; (2) Assistant Superintendent Alsip; (3) Ms. Stamper, Unit Team Manager; (4) Lt. J.C. Jackson; (5) Sgt. Griffin; (6) Sgt. Lunsford; (7) Custody Officer Hammond; (8) Dr. Lamar; (9) Dr. Levine; and (10) Wexford of Indiana, LLC in the manner

specified by Rule 4(d). Process shall consist of the complaint, dkt. [1], exhibits, dkts. [1-1], [1-2], and [1-3], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the IDOC defendants and Wexford of Indiana, LLC, electronically.

Defendant Dr. Lamar and Dr. Levine are identified as employees of Wexford of Indiana, LLC. Wexford is **ordered** to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information may be provided to the Court informally or may be filed ex parte.

**IT IS SO ORDERED.**

Date:   2/23/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

JOHN TAYLOR
249221
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Electronic Service to the following IDOC Employees at Pendleton Correctional Facility:
Superintendent Dushan Zatecky
Assistant Superintendent Alsip
Ms. Stamper, Unit Team Manager
Lt. J.C. Jackson
Sgt. Griffin
Sgt. Lunsford
Custody Officer Hammond

Electronic Service to Wexford of Indiana, LLC

Dr. Lamar
Health Care Professional
Pendleton Correctional Facility
4490 West Reformatory Road
Pendleton, IN 46064

Dr. Levine
Health Care Professional
Pendleton Correctional Facility
4490 West Reformatory Road
Pendleton, IN 46064